**SEA–LAND SERVICE, INC., Appellant,**

v.

**UNITED STATES of America.**

No. 88–5703.

United States Court of Appeals,
Third Circuit.

Argued March 1, 1989.

Decided May 9, 1989.

Michael D. Loprete, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., Stephen K. Carr (argued), Richard A. Menchini, Haight, Gardner, Poor & Havens, New York City, for appellant.

John R. Bolton, Asst. Atty. Gen., Samuel A. Alito, U.S. Atty., J. Patrick Glynn, Director, Harold J. Engel, Deputy Director, J. Charles Kruse, Sp. Litigation Counsel, Steven M. Talson (argued), Trial Atty., Torts Branch, Civ.Div., U.S. Dept. of Justice, Washington, D.C., for appellee.

Before HIGGINBOTHAM, STAPLETON, and COWEN, Circuit Judges.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

### I.

This is an appeal from an order of the district court granting the motion of the United States to dismiss Sea–Land Service, Inc.'s ("Sea–Land") complaint seeking contribution from the United States under, *inter alia*, the Suits In Admiralty Act ("SIAA"). The district court held that Sea–Land's "contribution action is time-barred by the two year statute of limitations of 46 U.S.C.App. § 745." 689 F.Supp. 450. We will reverse and remand.

### II.

Sea–Land here seeks contribution toward amounts it paid to settle a wrongful death action brought in the New York State Supreme Court for New York County, entitled *Anna Claire Swogger, as Executrix of the Estate of David D. Swogger v. Waterman Steamship Corp., et al.* (the "Swogger action"). The Swogger action was commenced by David Swogger, a seaman, on April 13, 1979 to recover damages for personal injury pursuant to the Jones Act, 46 U.S.C.App. § 688, and general maritime law. The complaint alleged that while working as a maritime engineer aboard thirteen vessels owned by Sea–Land and the other four ship-owner defendants, Swogger was exposed to asbestos-containing products that caused him to contract a lung disease. Swogger was employed on these vessels from 1949 to 1978.

Swogger died on January 10, 1980, before any discovery had been conducted, and the suit remained dormant for approximately two years. On June 15, 1982, Anna Claire, David Swogger's widow, was named executrix of her husband's estate, and she caused the complaint to be amended to state a claim for wrongful death. Discovery commenced shortly thereafter and Sea–Land then found out that the complaint omitted reference to his first seven years at sea, 1941–1948, and to his employers during that period. In February, 1984, after having completed discovery, Sea–Land filed a third-party complaint against fifty-two parties. Included in this number were four shipping companies that had operated, pursuant to General Agency Agreements with the United States, the ships upon which David Swogger had worked until 1949. Based on their contractual relationship with the United States, all four companies tendered their defense to the United States. The United States accepted the tenders and the court later entered an order dismissing the shipping companies from the state court action.

On June 24, 1985, Sea–Land settled with Mrs. Swogger for $385,208.28. On June 24, 1987, Sea–Land filed this suit in the district court against the United States seeking contribution or indemnity for its settlement with Swogger. The United States thereafter filed a motion to dismiss the complaint claiming that the district court lacked subject matter jurisdiction.

In granting the government's motion to dismiss, the district court held that it lacked subject matter jurisdiction because the action was time-barred under 46 U.S.C. App. § 745 (1982). The district court reasoned that *United New York Sandy Hook Pilots' Ass'n v. United States*, 355 F.2d 189 (2d Cir.1965) (Friendly, J.) supported the government's position that a cause of action for contribution against the govern-

ment in an admiralty case, for the purposes of section 5 of the SIAA, 46 U.S.C.App. § 745, arose at the time of the underlying injury. Although taking note of contrary authority, the court stated that "the law of admiralty appears to be distinct to itself; and it is not within the province of this court to amend that which has withstood the test of time." Thus, the court concluded that the statute started to run, at the latest, upon the date of David Swogger's death, January 10, 1980.

### III.

■ Sea–Land's action for contribution against the United States is governed by the two-year statute of limitations contained in the SIAA. The relevant provision states that "[s]uits authorized by this chapter may be brought only within two years after the cause of action arises...." 46 U.S.C.App. § 745. Accordingly, we must decide at what point a cause of action for contribution from the government arises under the SIAA.

We start our analysis with the general rule that a cause of action for contribution does not arise until the party seeking contribution has paid, or had a judgment rendered against him or her for, more than his or her fair share of a common liability. *ITT Rayonier, Inc. v. Southeastern Maritime Co.*, 620 F.2d 512, 514 (5th Cir.1980) (per curiam); *Roehrig v. City of Louisville*, 454 S.W.2d 703, 705 (Ky.1970); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Torts* § 50 at 339–340 (5th ed. 1984); 3 J. Moore, J. Lucas, and G. Grotheer, *Moore's Federal Practice* ¶ 14.09 at 14–55 to 14–56 (2d ed. 1988). Cases applying the general rule are legion. *See, e.g., Erie R.R. Co. v. Erie Transporta-*

*tion Co.*, 204 U.S. 220, 27 S.Ct. 246, 51 L.Ed. 450 (1907) (admiralty law); *Joiner v. Diamond M. Drilling Co.*, 688 F.2d 256 (5th Cir.1982) (applying Louisiana law); *United States Lines, Inc. v. United States*, 470 F.2d 487 (5th Cir.1972) (action against United States under the FTCA for negligent treatment of seaman); *General Electric Co. v. United States*, 620 F.Supp. 160 (D.C.Minn.1985), *aff'd*, 792 F.2d 107 (8th Cir.1986) (under the FTCA); *Bradford v. Indiana & Michigan Electric Co.*, 588 F.Supp. 708 (S.D.W.Va.1984) (admiralty law); *Feehan v. United States Lines, Inc.*, 522 F.Supp. 811 (S.D.N.Y.1980) (admiralty law); *Globig v. Greene & Gust Co.*, 184 F.Supp. 530 (E.D.Wis.1960) (contribution against the United States under the FTCA); *Chicago & N.W.R. Co. v. Chicago, R.I. & P.R. Co.*, 179 F.Supp. 33 (N.D.Iowa 1959), *aff'd*, 280 F.2d 110 (8th Cir.1960), *cert. denied*, 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364 (1961) (applying Iowa law); *New York & Porto Rico S.S. Co. v. Lee's Lighters, Inc.*, 48 F.2d 372 (E.D.N.Y.1930) (in an admiralty case, following the example of Pennsylvania law); *Trinity Universal Ins. Co. v. State Farm Mutual Auto Ins. Co.*, 246 Ark. 1021, 441 S.W.2d 95 (1969); *Read Drug & Chemical Co. v. Colwill Constr. Co.*, 250 Md. 406, 243 A.2d 548 (1968); *Sziber v. Stout*, 419 Mich. 514, 358 N.W.2d 330 (1984); *McKay v. Citizens Rapid Transit Co.*, 190 Va. 851, 59 S.E.2d 121 (1950); *State Farm Mut. Auto Ins. Co. v. Schara*, 56 Wis.2d 262, 201 N.W.2d 758 (1972).[1]

■ Moreover, as the government conceded at oral argument, this general rule is applied in admiralty as well as in other cases. A cause of action for contribution between private parties in admiralty cases

---

**1.** We also note that it is the general rule that "the fact that the statute of limitations has run against the original plaintiffs action does not bar a claim for contribution, since that cause of action does not arise until payment." (footnotes omitted) *Prosser and Keaton on Torts* § 50 at 340; *Keleket X-Ray Corp. v. United States*, 275 F.2d 167, 169 (D.C.Cir.1960) (In a FTCA case, the court stated that "[n]either releasing one tort-feasor, ... nor allowing the statute of limitations to run in favor of one tort-feasor [the government], as in this case, should be

permitted to [bar the second tort-feasor's claim for contribution against the first tort-feasor.]"). We see no reason to adopt a different rule for admiralty cases, *see Purnell v. Norned Shipping B.V.*, 801 F.2d 152, 154–156 (3d Cir.1986), even ones against the government. *See Central Rivers Towing v. City of Beardstown*, 750 F.2d 565, 571–572 (7th Cir.1984) (rejecting the government's argument that, as any direct suit against it was time-barred under the SIAA, it could not be liable in contribution to a joint tortfeasor).

accrues either when one party pays, or has a judgment entered against it, for more than its share of the damages. *See Erie R.R. Co. v. Erie Transportation Co.*, 204 U.S. 220, 226–227, 27 S.Ct. 246, 247–248, 51 L.Ed. 450 (1907) (stating that a right to contribution in an admiralty collision case accrues when the third-party plaintiff pays the original plaintiff). This court thus observed in *Purnell v. Norned Shipping B.V.*, 801 F.2d 152, 156 (3d Cir.1986), *cert. denied*, 480 U.S. 934, 107 S.Ct. 1576, 94 L.Ed.2d 767 (1987), a noncollision admiralty case, that "if the plaintiffs had a wrongful death claim against the City immediately following the decedents' deaths, ... the Stevedore, at that point, had an *inchoate* claim for contribution against the City under federal maritime law which would mature when it paid more than its share of the joint liability." (emphasis in original). Similarly, in the context of a collision case, we had occasion to address the issue of when a claim for contribution matures in *Stahl v. Ohio River Company*, 424 F.2d 52, 56 (3d Cir.1970) (analyzing when a claim for contribution is mature under F.R.C.P. 13 and 14, the court observed that a counter-claimant seeking contributions "could not show he was entitled to relief until there was a final adjudication of his liability ...").

These cases reflect the admiralty law as articulated by other courts. *See Petition of Bloomfield Steamship Co.*, 422 F.2d 728, 734 (2d Cir.1970) (In a collision case between private parties, "[t]he right to contribution from the joint tort-feasor can be appropriately asserted only where the other tort-feasor has paid more than half of a third party's damages."); *ITT Rayonier*, 620 F.2d 512 (In a noncollision case, the court stated that "the general rule that any limitations period in a cause of action for indemnity or contribution does not begin to run until judgment against the defendant has been entered or payment of the primary liability payment has been made

should be followed."); *Bradford*, 588 F.Supp. at 709.

■ Sustaining the government's position in this case would thus require us to hold that the rule in cases seeking contribution from the government under the SIAA is different from the rule universally applied in suits seeking contribution from private parties. We decline to do so.

Our touchstone, of course, must be Congress' intent in passing the SIAA, and we conclude that Congress would have us side with Sea–Land in this context. First, the best evidence of Congress' intent with respect to the relevant issue is found in the text of the statute itself. Section 2 of the Act provides that "[i]n cases where if such a vessel were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States...." 46 U.S.C. App. § 742 (1982). In addition, Section 743 mandates that "[s]uch suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." 46 U.S.C.App. § 743 (1982). In *Pantentas v. United States*, 687 F.2d 707 (3d Cir.1982), we recognized the effect of these provisions, stating that "the SIAA makes the government liable under the same circumstances in which a private party would be liable." 687 F.2d at 715. While the *Pantentas* case dealt with the issue of whether detrimental reliance was an essential element of governmental liability, the governing principle of that case is also applicable here. As we have demonstrated, assuming the facts stated in the complaint to be true, a private party in the government's position would be liable to Sea–Land and we believe Congress intended the government to be as well.

■ Second, where, as here, Congress adopts a statute of limitations against a background of a body of consistently applied limitations and contributions law,[2] we

---

2. The Suits in Admiralty Act was enacted in March 1920 against the backdrop of *Erie R.R. Co. v. Erie Transportation Co.*, 204 U.S. 220, 226–227, 27 S.Ct. 246, 247–248, 51 L.Ed. 450 (1907); *In re Eastern Dredging Co.*, 182 F. 179, 183 (D.C.Mass.1909) (In a collision case, the

believe that a court should not infer a congressional intent to depart from precedent in the absence of some clear indication that it made a decision to do so. Here, the government has referred us to no legislative history suggesting in any way that Congress rejected the general rule that a claim for contribution does not accrue at the time of the injury to the third party.

Third, the government has suggested no policy reason why Congress, having accepted the overarching principle of placing the government in parity with private shipowners, might have been motivated to fashion a special rule for contribution or limitations purposes that would place the government in a different position than private operators. While the government stresses that the general rule can result in a very extended exposure for it, that exposure is no greater than that of other shipowners.[3]

Finally, we note that virtually all of the helpful case law favors Sea–Land's position. The Court of Appeals for the Seventh Circuit addressed the issue before us in *Central Rivers Towing v. City of Beardstown*, 750 F.2d 565 (7th Cir.1984). It held that the claim for contribution did not arise until judgment had been entered against the plaintiff. *Id.* at 572.

We find *Central Rivers* to be the only court of appeals decision directly on point. Unlike the district court and the government, we do not find help on the issue before us in *Sandy Hook Pilots' Assn.*, 355 F.2d 189. The essence of the court's decision in *Sandy Hook* was the affirmance of the district court's determination that it was bound by the principles of *res judicata* when granting a motion to dismiss a pleading that was identical to one that had been filed three years before and that had been

found to be time-barred. The court noted that the original decision had not been appealed and that the pleading had not been amended as was then permitted. The government mistakenly interprets Judge Friendly's characterization of the reasoning of the first, unappealed district court's opinion as the holding of the Court of Appeals.

In addition to *Central Rivers*, we find support for our conclusion in the cases that have addressed the issue of when a claim for contribution arises under the Federal Tort Claims Act ("FTCA"). That Act, like the SIAA, waives the sovereign immunity of the United States in circumstances where a similarly situated private party would be liable to another, *United States v. Yellow Cab*, 340 U.S. 543, 548, 71 S.Ct. 399, 403, 95 L.Ed. 523 (1951), and also like the SIAA, it was adopted against a backdrop of limitations law consistently holding that claims for contribution did not accrue at the time of injury to the third party. The courts that have addressed the analogous issue under the FTCA have concluded that a claim for contribution does not accrue until the claimant has paid, or been held liable for, more than his or her share of a common liability. *United States Lines, Inc. v. United States*, 470 F.2d 487, 489 (5th Cir.1972) ("Provided there exist a right to contribution or indemnity [against the government], the applicable two year statute of limitations (28 U.S.C.A. § 2401(b)) does not run from the date of injury but from the time the right to contribution or indemnity accrued, namely, date of payment to the seaman...."); *General Electric Co. v. United States*, 620 F.Supp. 160, 161 (D.C.Minn.1985) ("In an action against the United States for contribution, a claim

---

court stated that "[t]he payment of those claims will give it a right to recover one-half of what it so pays, in admiralty, as an incident of the joint liability against the owner of the scow."); and *The 'Juniata'*, 93 U.S. 337, 340, 23 L.Ed. 930 (1876), which had already established that a right to contribution in applicable admiralty cases accrued upon payment of the underlying claim.

**3.** We are cognizant of the government's position that waivers of sovereign immunity must be construed strictly. *See United States v. Mitchell,*

445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed. 2d 607 (1980). While we do not dispute this proposition, we do not find it helpful here. *See Cohen v. United States*, 195 F.2d 1019, 1021 (2d Cir.1952) (Interpreting 46 U.S.C.App. § 745 the court stated that "[w]hile it is well settled that statutes permitting the government to be sued are to be construed strictly, the overriding consideration is that the intent of Congress, where that can be determined, must be given effect." (citations omitted)).

accrues when the claimant pays the judgment upon which the cause of action for contribution is based."); *see also Yellow Cab*, 340 U.S. at 552, 71 S.Ct. at 405 (indicating that a right to contribution under the FTCA accrues when the claimant pays the underlying judgment); *Chicago, Rock Island & Pacific Ry Co. v. United States*, 220 F.2d 939, 942 (7th Cir.1955) ("It is plain, of course, that no claim [for indemnity] accrued to plaintiff against the government prior to the date when the former made payment to its employee.") We have found no contrary authority under the FTCA.[4]

## IV.

We will reverse and remand for further proceedings consistent with this opinion.

---

**4.** The government argues that the Court of Appeals for the District of Columbia Circuit has adopted a different rule. We disagree. In *Keleket X–Ray Corp v. United States*, 275 F.2d 167 (D.C.Cir.1960), the court stated that the cause of action for contribution did not accrue before the third-party plaintiff had been sued by the plaintiff. The court, holding that the contribution suit was not time-barred, did not need to address, and did not reach, the question of whether the cause of action actually accrued at a later date.