**SAINT PAUL FIRE & MARINE INSURANCE CO. and Serodino, Inc., Plaintiffs,**

v.

**UNITED STATES of America and United States of America Army Corps of Engineers, Defendants.**

**Chris Gray, Plaintiff,**

v.

**Serodino, Inc., Defendant.**

**Nos. 1:96–CV–337, 1:96–CV–347.**

United States District Court, E.D. Tennessee.

March 31, 1998.

E. Blake Moore, Spears, Moore, Rebman & Williams, Chattanooga, TN, Todd M. Powers, Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH, for St. Paul Fire & Marine Ins. Co., Serodino, Inc.

Ronald J. Berke, Berke, Berke & Berke, Chattanooga, TN, for Chris Gray.

M. Kent Anderson, U.S. Department of Justice, Office of U.S. Attorney, Chattanooga, TN, for U.S.

*MEMORANDUM*

COLLIER, District Judge.

Before the Court is Defendants United States of America and United States of America Army Corps of Engineers's (collectively "United States") Motion for Summary Judgment (Court File No. 11). Plaintiffs Saint Paul Fire and Marine Insurance Company ("St.Paul") and Serodino, Inc. ("Serodino") responded (Court File No. 14) and the United States replied (Court File No. 34).

For the following reasons, the Court will **GRANT** the United States's Motion for Summary Judgment. Remaining for adjudication are Chris Gray's claims against Serodino.

## I. *PERTINENT FACTS*

The undisputed facts are as follows. Seaman Christopher Gray was injured while assisting in a locking procedure through the Chickamauga Lock and Dam involving the barges from the tow of the M/V Bearcat, a vessel owned and operated by Serodino and to which Gray was assigned. A "mule" or "haul-out" unit was attached to the barges by a "pull-out cable" and was being used to pull the barge vessel through the lock. The mule was controlled by James Reagan, an employee of the Unites States Army Corps of Engineers. At the time of the incident, Gray was off the M/V Bearcat and the barges and was on the concrete wall of the lock on shore. The mule ran over Gray's foot causing him to lose a portion of his foot and sustain other injuries.

On July 1, 1996, Serodino and St. Paul filed suit against the United States asserting a claim for contribution or indemnity for the United States's proportionate share of liability with respect to Gray's injuries (Court File No. 1). In the Complaint, Plaintiffs alleged their case was within the admiralty jurisdiction of the Court and the Court had *in personam* jurisdiction over the United States pursuant to the Suits in Admiralty Act, 46 U.S.C.App. §§ 741–752 (*Id.* at ¶¶ 3–4). On July 9, 1996, Gray filed suit against Serodino asserting a claim under the Jones Act, 46 U.S.C.App. § 688, for the injuries he incurred (Case No. 1:96–CV–347, Court File No. 1). Gray also alleged his claim fell with-

in the admiralty jurisdiction of the Court (*Id.* at ¶ 3). By Order of the Court, these two cases were consolidated with Case No. 1:96–CV–337 being designated as the lead case (Court File Nos. 9 and 10). The consolidated action was then transferred to United States District Court Judge Curtis L. Collier for adjudication (Court File No. 10).

The United States filed a Motion for Summary Judgment arguing the Court lacks subject matter jurisdiction over Plaintiffs Serodino and St. Paul's (collectively "Plaintiffs") indemnification and contribution claims because the claims do not fall within the Court's admiralty jurisdiction and thus, the United States has not waived sovereign immunity under the Suits in Admiralty Act (Court File No. 11). Plaintiffs dispute this contention and filed a reply (Court File No. 14). The United States responded (Court File No. 34)

## II. *DISCUSSION*

Both parties agree for Serodino and St. Paul to assert a claim against the United States under the Suits in Admiralty Act,[1] admiralty law must provide the basis for the cause of action. Plaintiffs contend the Court has admiralty jurisdiction over their contribution and indemnification claims against the United States because (1) the action falls within the Admiralty Extension Act and/or (2) there is admiralty jurisdiction over Gray's claims against Serodino.[2] The Court will in turn address each of these arguments.

### A. Admiralty Extension Act

■ Under the Admiralty Extension Act ("AEA"), damages to shore structures and injuries on land are within the scope of admiralty jurisdiction even where there is no impact by a vessel, if the damage is proximately caused by the navigation of the vessel

or negligence in its management and control. *See* 46 U.S.C.App. § 740. Plaintiffs argue their claims fall within the AEA because Gray's injuries resulted from Reagan's negligent navigation, control, and management of the barge vessel and were directly caused by a piece of equipment connected to the vessel. However, if the Court assumes, *arguendo*, this is true, Plaintiffs have still failed to state a claim under the AEA.

■ Before a claim is cognizable under the AEA, an administrative requirement must be followed. The AEA provides:

> no suit shall be filed against the United States until there shall have expired a period of six months after the claim has been presented in writing to the Federal agency owning or operating the vessel causing the injury or damage

*Id.*

The United States Court of Appeals for the Sixth Circuit has not addressed whether the administrative filing requirement is jurisdictional. However, both the Second and Fifth Circuits have held the failure of a plaintiff to file a claim six months prior to filing suit against the United States divests a court of jurisdiction over an AEA action. *Loeber v. Bay Tankers, Inc.,* 924 F.2d 1340, 1342–43 (5th Cir.1991); *See Keene Corp. v. United States,* 700 F.2d 836, 843 n. 12 (2d Cir.1983). This Court agrees.

The undisputed evidence is Plaintiffs did not file a claim with the government requesting contribution or indemnity until July 1996 (Claim for Damage, Injury, or Death attached to Court File No. 34).[3] Since Plaintiffs also filed suit against the United States in July 1996, there was not a six month period between the time the claim was submitted to the government and the filing of this suit. Accordingly, the AEA does not

---

1. It is necessary for Plaintiffs' claim to fall within the Suits in Admiralty Act because under that Act the United States has waived sovereign immunity. 46 U.S.C. app. § 742.

2. While it is clear the Tennessee River is a navigable water of the United States, there does not appear to be any dispute Gray was injured while working on the Chickamauga Lock and Dam lock wall, that is, he was not on the vessel and

barges and was on the concrete lock wall on shore.

3. It is unclear whether the claim was filed on July 1, 1996 which is the date next to the signature line or whether the claim was filed on July 5, 1996 which is the date the claim form is stamped as having been received in the Office of Counsel. However, this difference in dates does not affect the Court's decision.

provide admiralty jurisdiction as a basis for the Plaintiffs' indemnification and contribution claims against the United States.

### B. Admiralty Jurisdiction over Gray's Underlying Claim

▮ Next, Plaintiffs contend the Court has admiralty jurisdiction over their indemnity and contribution claims against the United States because Gray's underlying claim against Serodino falls within the Court's admiralty jurisdiction. Thus, Plaintiffs are arguing the Court has admiralty jurisdiction over a third party claim for indemnification or contribution if the Court has admiralty jurisdiction over the underlying claim between the plaintiff and the defendant.[4] In support of this argument, Plaintiffs cite to several cases and an admiralty treatise. However, Plaintiffs reliance on this material is misplaced.

Two cases cited by the Plaintiffs, *Johnson v. Offshore Exp. Inc.*, 845 F.2d 1347 (5th Cir.1988) and *White v. Johns–Manville Corp.*, 662 F.2d 234, 239 (4th Cir.1981), do not involve the issue of admiralty jurisdiction over a third party claim for indemnity or contribution. While three other cited cases, *Loeber v. U.S.*, 803 F.Supp. 1154 (E.D.La. 1992), *Bradford v. Indiana & Michigan Elec. Co.*, 588 F.Supp. 708 (S.D.W.Va.), and *Hale v. Co–Mar Offshore Corp.*, 588 F.Supp. 1212 (W.D.La.1984), did involve whether there was admiralty jurisdiction over a third party claim, these cases are distinguishable because the injured party had an independent action in admiralty against the third party.[5] As will be discussed, the injured party's ability to bring an independent admiralty action against the third party is an important distinction especially with respect to the cases Plaintiffs cited from the Fifth Circuit.

Plaintiffs also make the general statement "a claim for contribution or indemnity is maritime in nature where the liability of the third party plaintiff was maritime, notwithstanding that the relationship between the third party plaintiff and the third party defendant may have been generally non-maritime." In support of this statement, Plaintiffs cited to three cases, *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173 (5th Cir.1984); *Sperry Rand Corp. v. Radio Corp. of America*, 618 F.2d 319 (5th Cir.1980); *Watz v. Zapata Off–Shore Co.*, 431 F.2d 100, 118 (5th Cir.1970). While *Sperry Rand* and *Watz* do permit the exercise of admiralty jurisdiction over a third party claim for contribution or indemnification even though the relationship between the third party defendant and the third party plaintiff may be nonmaritime, *Lowe* makes it clear the only reason the admiralty jurisdiction is permitted is because the injured party had an independent cause of action in admiralty against the third party. As the Fifth Circuit explained in *Lowe*, "these decisions [*Sperry Rand* and *Watz*] *do not* establish that because Litton's [defendant and third party plaintiff] liability to its employees was under the LHWCA [Longshoreman's and Harbor Workers' Compensation Act], therefore Litton's non-LHWCA rights [claim for indemnification] against Owens–Corning [third party defendant] must be governed by maritime law." *Lowe*, 723 F.2d at 1184. The court further explained the distinctions between *Sperry Rand* and *Watz* and the *Lowe* decision by stating:

---

4. Serodino and St. Paul's claims against the United States does not meet the technical definition of a third party complaint to Gray's action since Serodino and St. Paul's suit was filed before the filing of Gray's lawsuit. *See* Section I, Pertinent Facts. Thus, Plaintiffs argument would fail as an initial matter since the underlying action is Serodino and St. Paul's claim against the United States. However, the Court recognizes a claim for indemnification or contribution is typically brought as a third party action and the ease with which the parties could be realigned if the Court had been presented with a motion. Accordingly, the Court will analyze the issue of admiralty jurisdiction according to the manner in which it was briefed by the Plaintiffs.

5. *Bradford* and *Loeber* also explain that it makes no difference if the injured party later loses the ability, such as by failing to follow the administrative requirements, to bring an independent admiralty claim against the third party. As long as the plaintiffs originally had that ability, any claim by the third party plaintiff for contribution or indemnification against the third party defendant could also be maritime. The instant case is distinguishable, however, because the injured party, Gray, never had any independent right to bring an action in admiralty against the third party, the United States.

In *Sperry Rand* and *Watz* the injured party (occupying a position analogous to that of the employee-plaintiffs, here) would have had a maritime suit for injuries in question (the asbestosis, here) against the indemnitor (Owens–Corning, here) as well as against the indemnitee (Litton, here). For the reasons set forth below in more detail, *the complaint and the record here do not demonstrate that the actions of these employee-plaintiffs against Owens– Corning, on account of asbestosis incurred while working for Litton, would be governed by maritime law. Moreover, if the employee's action against the third party is nonmaritime, then Sperry Rand and Watz would equally point to the third party's indemnification action against the employer as being nonmaritime,* and in that event it would also seem that the employer's extra-LHWCA rights [claim for indemnification] against the third party respecting the same occurrence should likewise be nonmaritime.

*Id.*

The admiralty treatise cited by the Plaintiffs also does not support their position. The treatise contends "[t]here is admiralty jurisdiction over claims for contribution and indemnity if jurisdiction exists over the underlying cause of action." Schoenbaum, *Admiralty and Maritime Law*, § 5–18, at 215 (2d. ed.1994). However, a close study of this language indicates the author based this conclusion on the *Hale* and *Lowe* decisions. *See id.* at 1177 n. 3. As discussed previously, *Hale* was a case where the injured party had an independent admiralty cause of action against the third party and *Lowe* explains that if the relationship between the injured party and the third party is nonmaritime, then the indemnification claim between the third parties should likewise be nonmaritime.

Plaintiffs also cite to the Schoenbaum treatise for the proposition "admiralty law recognizes a cause of action on behalf of an employer who pays maintenance and cure to a seaman for injuries resulting from the fault

or negligence of a third party" (Court File No. 14, p. 7).[6] Again, a review of the material utilized by the author demonstrates this conclusion was based upon three decisions issued from courts within the Fifth Circuit, *Savoie v. Lafourche Boat Rentals, Inc.*, 627 F.2d 722 (5th Cir.1980); *Wisconsin Barge Line, Inc. v. Barge Chem 301*, 390 F.Supp. 1388, 1393–94 (M.D.La.1975), *reversed on other grounds*, 546 F.2d 1125 (5th Cir.1977); and *Richardson v. St. Charles–St. John Baptist Bridge and Ferry Authority*, 284 F.Supp. 709, 716 (E.D.La.1968). However, as the *Lowe* decision issued by the Fifth Circuit in 1984—after the three decisions cited by the author—makes clear, *Savoie, Lafourche*, and *Richardson* could not support such a blanket proposition.

Finally, Plaintiffs contend the case of *Freeborn v. Upper Lakes Shipping, Ltd.*, 541 F.Supp. 1099 (W.D.Mich.1982) is analogous to the instant case. In *Freeborn*, Plaintiff was employed by the United States Army Corps of Engineers and was assisting one of defendant Upper Lake's ships through a lock. Plaintiff alleged the winch operator on defendant's ship negligently operated the forward winch resulting in the plaintiff receiving a broken leg when he released a cable and it struck a patch of ice. Plaintiff recovered from the United States under the Federal Employees' Compensation Act ("FECA") and then also brought suit against Upper Lakes. Upper Lakes then filed a third party complaint seeking indemnification from the United States. The issue before the district court was whether the exclusive remedy provision of either the FECA or the LHWCA barred Upper Lake's suit against the government for indemnification. *Id.* at 1101. However, in a footnote, the court stated "Upper Lakes specifically and properly, invoked the admiralty jurisdiction of this court." *Id.* at 1101 n. 2. It is upon this statement the Plaintiffs rest their entire case.

Though the district court did not elaborate on how Upper Lakes properly invoked admi-

---

**6.** The treatise states "[a]n employer who pays maintenance and cure to a seaman has a right to complete indemnity from an independent tortfeasor whose fault or negligence was the sole cause of the injury." Schoenbaum, *Admiralty and*

*Maritime Law*, § 6–35, at 369 (2d. ed.1994). The author's actual statement does not conclude the employer's right to indemnity rests within admiralty jurisdiction.

ralty jurisdiction, the court cited three cases in support of its decision, *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), *Gutierrez v. Waterman Steamship Corp.,* 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), and *Interlake S.S. Co. v. Nielsen,* 338 F.2d 879 (6th Cir.1964). None of these cases involved the exercise of admiralty jurisdiction over a third party claim for indemnification or contribution merely based on the court having admiralty jurisdiction over the claim between the plaintiff and defendant. Instead, each of these cases discussed how the AEA extends admiralty jurisdiction to cases involving damages to land structures caused by ships on navigable waters. *Executive Jet,* 409 U.S. at 260, 93 S.Ct. 493;[7] *Gutierrez,* 373 U.S. at 209, 83 S.Ct. 1185; and *Interlake,* 338 F.2d at 882. Thus, it is clear the district court based an admiralty jurisdiction determination on the AEA and not the theory Plaintiffs request this Court to adopt.[8]

Plaintiffs have not disputed the United States's contention that Gray does not have an independent cause of action in admiralty against the United States. As the Court has extensively detailed, none of the material cited by the Plaintiffs hold a court may exercise admiralty jurisdiction over a third party merely because a claim in admiralty has been asserted by the plaintiff against the defendant. In fact, the Court agrees with and adopts the Fifth Circuit's decision in *Lowe* which states when the plaintiff's action against the third party is nonmaritime, the third party plaintiff's action against the third party defendant should likewise be nonmari-

time. *Lowe,* 723 F.2d at 1184. Accordingly, the Court finds Gray's admiralty claim against Serodino does not provide a basis for the Plaintiffs to assert a admiralty claim against the United States. The Court will **GRANT** the United States's Motion for Summary Judgment.

### III. CONCLUSION

For there to be a waiver of sovereign immunity by the United States under the Suits in Admiralty Act, Serodino and St. Paul's claims for indemnification and contribution must be within the Court's admiralty jurisdiction. However, the Court concludes admiralty jurisdiction could not be based on the Admiralty Extension Act because the Plaintiffs have failed to follow the administrative filing requirement.[9] The Court also finds Plaintiffs' claims do not fall within admiralty jurisdiction merely because Gray has asserted a claim against Serodino which is within the Court's admiralty jurisdiction. Accordingly, finding no subject matter jurisdiction in admiralty over the Plaintiffs' claims, the Court will **GRANT** the United States's Motion for Summary Judgment.

---

**7.** The ultimate issue in *Executive Jet* was when airplane negligence cases qualified as maritime torts. However, since *Freeborn* did not involve a claim of airplane negligence, the district court must have cited the *Executive Jet* decision for a different proposition. Since the major issues in *Gutierrez* and *Interlake* involved admiralty jurisdiction under the AEA, it is reasonable to conclude the district court also cited *Executive Jet* because of the Supreme Court's recitation regarding the AEA. This conclusion is consistent with another case cited by the district court, *Wiper v. Great Lakes Engineering Works,* 340 F.2d 727 (6th Cir.1965). When citing this case, the court used the signal "Cf." which literally means compare. *The Bluebook: A Uniform System of Citation,* at p. 23 (16 ed.). In *Wiper,* the Sixth Circuit held a claim regarding the negligent

maintenance of a dock did not fall within the court's admiralty jurisdiction. Since the AEA, in limited circumstances, permits the exercise of admiralty jurisdiction when the damage or injury is consummated on land, the district court was evidently advising the reader to compare the AEA holdings in *Executive Jet, Gutierrez,* and *Interlake* with the result reached in the *Wiper* decision.

**8.** As discussed in Section II(A) of this Memorandum, Plaintiffs' suit does not present a cognizable claim under the AEA because Plaintiffs have failed to meet the administrative filing requirement.

**9.** *See* footnote 2.